Filed Jan. 5, 1888.

No. 14,296.

JEFFERSON SCHOOL TOWNSHIP *v.* LITTON, ADMINISTRATOR.

TOWNSHIP.—*School Supplies.*—*Limitation upon Power of Trustee to Incur Debts.*—A township trustee can not, without first procuring an order from the board of county commissioners, as provided in sections 6006 and 6007, R. S. 1881, incur a debt in behalf of his school township for school furniture and apparatus, in excess of "the fund on hand" to which such debt is chargeable, and of "the fund to be derived from the tax assessed against his township for the year in which such debt is to be incurred."

SAME.—*Statute Construed.*—The provision, "the fund on hand," as used in section 6006, means the money actually in the hands of the trustee, and the provision, "the fund to be derived from the tax assessed against his township for the year in which such debt is to be incurred," means the amount to be derived from the school tax assessed in the prior calendar year and collectible during the year in which the debt is to be incurred.

SAME.—*Legalizing Act of 1883.*—Under the act of 1883 (Acts of 1883, p. 114), an indebtedness incurred in 1882 by a township trustee for suitable and necessary school supplies, in violation of sections 6006 and 6007, is legalized and made an enforceable obligation against the township.

From the Sullivan Circuit Court.

*W. C. Hultz* and *O. B. Harris,* for appellant.
*J. T. Hays* and *H. J. Hays,* for appellee.

ZOLLARS, J.—As administrator of the estate of A. Litton, deceased, appellee instituted this action against the school township to recover the amount of two certificates of indebtedness issued by the trustee of that township to the McBride Tellurian Company for thirteen of the McBride tellurians. The decedent held the certificate as a *bona fide* assignee of the McBride Tellurian Company.

It is averred in the complaint that the tellurians were suitable and necessary for the schools of the township; that they were delivered to, and accepted by, that corporation, and have ever since been used in the schools, and that they were of the value agreed upon and stated in the certificates of indebtedness.

Under the decisions of this court the complaint is clearly sufficient to withstand the demurrer. *Bloomington School Tp., etc., v. National School Furnishing Co.,* 107 Ind. 43; *State, ex rel., v. Hawes,* 112 Ind. 323; *Boyd v. Mill Creek School Tp.,* 114 Ind. 210; *Miller v. White River School Tp.,* 101 Ind. 503; *Pine Civil Tp. v. Huber Manf'g Co.,* 83 Ind. 121.

It was held in the case last above cited, that a defence, based upon the act of 1875, sections 6006 and 6007, R. S. 1881, need not be anticipated in the complaint, but must be brought forward by an answer. That, the appellant, defendant below, attempted to do, and the question is, as to whether or not the answer is sufficient under those sections and subsequent legislation.

Section 6006 provides that " Whenever it becomes necessary for the trustee of any township in this State to incur, on behalf of his township, any debt or debts whose aggregate amount shall be in excess of the fund on hand to which such debt or debts are chargeable, and of the fund to be derived from the tax assessed against his township for the year in

which such debt is to be incurred, such trustee shall first procure an order from the board of county commissioners of the county in which such township is situated, authorizing him to contract such indebtedness."

Section 6007 provides that "Before the board of commissioners shall grant such order, the township trustee shall file, in the auditor's office of his county, a petition, setting forth therein the object for which such debt or debts are to be incurred and the approximate amount required, and shall make affidavit that he has caused notice to be given of the pendency of such petition, by posting notices, in not less than five public places in his township, at least twenty days prior to the first day of the session of said board."

That those sections limit the authority of township trustees to incur debts on behalf of their school townships, as well as on behalf of their civil townships, we have no doubt. This conclusion was reached in the case of *Middleton* v. *Greeson*, 106 Ind. 18, after a very thorough examination of former rulings, and of those sections, as well as of later statutes which lend aid to the conclusion by way of legislative interpretation. To what was said in that case in support of the conclusion reached, but little need be added here.

The precise question adjudicated in that case was, that a township trustee can not, without complying with the provisions of sections 6006 and 6007, incur a debt on behalf of his school township for the erection of a school-house, in excess of the fund on hand to which such debt is chargeable, and of the fund to be derived from the tax assessed against his township for the year in which such debt is incurred.

The reasoning in the case, however, just as inevitably leads to the conclusion that such trustee is thus limited by those sections in contracting debts in behalf of his school township for school furniture and apparatus.

Such contracts were by far the most common, and had led to abuses which the Legislature, doubtless, intended to check by the enactment of sections 6006 and 6007, *supra*, and by

the passage of subsequent acts. The act of 1873 (Acts 1873, p. 209; section 4471, R. S. 1881), for example, referred to in the decision of that case, has as much reference to debts contracted for school furniture and apparatus as for erecting or repairing school-houses.

The title of the act is: "An act to authorize township trustees to levy an additional tax * * * for the purpose of paying, satisfying, and liquidating debts made and contracted by such trustee, in the construction, repairing, or completing of school-houses, and providing furniture and school apparatus therefor," etc.

And so, the act provided that in all cases where any township trustee may have heretofore contracted debts against any township in the construction, repairing or completion of school-houses, or in providing furniture, or school apparatus therefor, and the special school revenue tax as provided for, etc., shall be insufficient to satisfy, pay and liquidate debts so made and contracted by such trustee, then, and in that case, such township trustee might make an additional levy, etc.

That act not only shows that the term "township trustee" was used by the Legislature as designating the officer, whether acting as trustee of the civil township or as trustee of the school township, but, also, that school townships had become indebted for school-houses, and for school furniture and apparatus, beyond their ability to pay without a tax levy beyond what the law at that time authorized. The purpose of the act was to enable township trustees to pay off the indebtedness of both the civil and school townships, and start anew.

When 1875 came, it was found, in all probability, that while the act of 1873, supra, may have enabled township trustees to pay off the prior indebtedness of the civil and school townships, it had in no way tended to lessen prodigal expenditures on their part.

As stated in the case of Middleton v. Greeson, supra, the act of 1875 (sections 6006 and 6007, supra,) doubtless was intended to check and remedy a growing evil. That evil, as

evidenced by the act of 1873, *supra,* was the contracting of debts in the building and repairing of school buildings, and in the purchase of school furniture and apparatus, in excess of the funds at the command of the trustees.

It would not be reasonable to suppose that the Legislature, with the evils before it, as evidenced by the act of 1873, intended by the act of 1875 to overlook the greatest of those evils, viz., the prodigal incurring of debts for school furniture and apparatus.

Having determined that sections 6006 and 6007 limit the power of township trustees to incur debts on behalf of school townships in the purchase of school supplies, we come to the question of the proper construction of section 6006, about which counsel disagree.

Without an order from the county board, a township trustee can not incur on behalf of his township any debt or debts whose aggregate amount shall be in excess of *the fund on hand* to which such debt or debts are chargeable, *and of the fund to be derived from the tax assessed against his township for the year in which such debt is to be incurred.*

What is the proper construction of that portion of the section which we have italicized ?

Counsel for the appellee contend that the " fund on hand " means the money actually in the hands of the trustee, and the amount to be derived from the special school revenue tax assessed in the prior year and collectible during the year in which the debt is to be incurred, and that " the fund to be derived from the tax assessed against his township for the year in which such debt is to be incurred," is the fund to be derived from the tax assessed in the year in which the debt may be incurred, although collectible in the year following. We can not give our sanction to that construction.

In the absence of anything in the act indicating a different intention, the " year " must be taken to be the calendar year, from the 1st day of January to the 31st day of December.   Section 240, R. S. 1881.   The language of the sec-

tion, it will be observed, is not " and of the fund to be derived from the tax assessed against the township *in* the year," but " of the fund to be derived from the tax assessed against the township *for* the year " in which the debt is to be incurred.

The township trustee has authority, and it is made his duty, at the June session of the county board annually, with the advice and concurrence of that board, to levy a special tax on the property of the township, and a poll-tax for the construction of school houses, etc., and for providing furniture and school apparatus, etc. The levy thus made, he is required to report to the county auditor, whose duty it is to enter the same upon the proper tax duplicate, to be collected by the treasurer as other taxes are collected. Sections 4467, 5995, R. S. 1881.

It is the duty of the county auditor, between the first Monday in June and the last day of December, to make out a duplicate list of taxes assessed in the county, etc., and to deliver a copy of the duplicate to the county treasurer on or before the last day of December. Sections 6417, 6422.

The taxpayer has until the third Monday in April in which to pay the first instalment of his taxes, and until the first Monday in November to pay the second instalment. Section 6426, R. S. 1881.

The county treasurer is required to make annual settlements with the auditor on the third Monday in April, and after such settlement, upon the warrant of the auditor, to pay over to township trustees all moneys in his hands belonging to each township. Sections 6000, 6500, R. S. 1881.

It will thus be seen that taxes are not to be, and can not be, collected in the same calendar year in which they are assessed. They are assessed *in* one year *for* the succeeding year—the year in which they are to be collected. When, therefore, a township trustee makes an estimate of the amount of special school revenue necessary, and makes the levy by virtue of the above cited statutes, he has, and must have, reference to the wants of the succeeding year. In

other words, the tax is assessed *in* one year for the year following.

In the case before us the debt was incurred on the 10th day of October, 1882. The fund on hand to which the debt was chargeable at that time was the amount of the special school revenue in the hands of the trustee. Clearly, an uncollected tax is not a fund on hand, nor is a fund in the hands of the county treasurer a fund on hand as to the township trustee. And at the time the debt was incurred, the fund to be derived from the tax assessed against the township *for* the year was the fund to be derived from the special school revenue tax assessed in .1881, to be collected in 1882. But two funds are at the disposal of the township trustee under sections 6006 and 6007, *supra.* One is the fund actually on hand, and the other is the special school revenue tax assessed *for* that year. The section does not authorize the trustee, in estimating the funds, to include two tax levies. Under the construction which we here adopt, the township trustee may, at any time, readily determine whether or not a debt which he is about to incur on behalf of his township may be incurred by him without authority from the county board. He can readily know how much he has on hand, and he can also readily know, very nearly, at. least, by an examination of the tax duplicates and by consulting with the county treasurer, how much he will receive during the year from the tax assessed for, and collectible in, the year.

Persons dealing with him, also, will thus have some opportunity of ascertaining whether or not the debt which he may propose to incur on behalf of his township may be incurred by him without authority from the county board.

Under the construction contended for by appellant's counsel, neither the trustee, nor those dealing with him, could in any case ascertain those facts until after the tax levy in June in each year. Persons owning property on the 1st day of April in any year are liable for the taxes assessed and levied in that year, but that is by virtue of special statutes, which

are not important here.    Sections 6281, 6446, R. S. 1881;
*Kirkpatrick* v. *Pearce*, 107 Ind. 520.

The answer shows that the debt involved here, and which
was incurred on behalf of the school township by the town-
ship trustee, was in excess of the amount of the fund on hand,
and the fund to be derived from the tax assessed against the
township, for the year in which the debt was incurred.    The
answer, therefore, brings the case within the terms of sections
6006 and 6007, *supra*.

We have concluded, however, that the act of 1883 (Acts
1883, p. 114) makes the debt valid, and, therefore, renders
the answer insufficient.    In that act there is a recognition of
the fact that, notwithstanding the act of 1875, sections 6006
6007, *supra*, township trustees had gone on, and had under-
taken, at least, to incur debts in violation of their provisions.

The preamble of the act is: " Whereas, many townships in
the various counties in the State of Indiana have become in-
debted to an amount in excess of their present ability to pay,
and at the same time keep up current expenses, with the
amount of taxes now by law authorized to be levied, there-
fore," etc.

Section 1 of the act is as follows: " Be it enacted * * *
That in any such township the trustee thereof shall have the
power to levy, in their respective townships, taxes sufficient to
pay such indebtedness ; but the taxes herein authorized to be
levied shall not in any one year exceed the sum of twenty
cents on each one hundred dollars valuation of taxable prop-
erty, in such township, and twenty-five cents on each taxable
poll, for the debt of the school township, and a like amount for
the civil township (as the case may require), in addition to the
amounts now authorized by law to be levied ; and the rev-
enues arising from the taxes herein authorized to be levied
shall in no case be diverted to or used for any other pur-
pose than the liquidation of such indebtedness."

In that act the Legislature again, as by the act of 1873,
*supra*, authorized an additional levy to pay debts incurred

by township trustees on behalf of their school and civil townships, in excess of the ability of the townships to pay without an additional levy. By thus providing for the payment of such debts, without distinction as to the manner in which they had been incurred, the Legislature, we think, not only gave recognition to the equity and justness of the creditor's claims, but impliedly, at least, legalized those claims in so far as the debts may have been incurred in violation of sections 6006 and 6007, *supra.* We are strengthened in this conclusion especially by the second section of the act. It reads as follows: "And it is further provided, that any township trustee * * * who shall contract any debt in the name or in behalf of any civil or school township of which he may be the trustee, contrary to the provisions of sections 1 and 2 of 'An act to limit the powers of township trustees in incurring debts,' * * * approved March 11th, 1875 (the same being numbered six thousand and six and six thousand and seven of the Revised Statutes of the State of Indiana), shall be personally liable, and liable on his official bond, to the holder of any contract or other evidence of such indebtedness, for the amount thereof."

That section seems very clearly to have been based upon the assumption that township trustees had undertaken, at least, to incur debts in violation of sections 6006 and 6007, *supra,* and that, notwithstanding such violations, creditors without actual knowledge of the facts should be protected as in the first section provided. As to the future, two purposes are manifest in the section: One is to save innocent creditors, and the other is to effectually prevent any further extravagance on the part of township trustees in violation of sections 6006 and 6007, *supra,* by making them and their bondsmen liable for the debts thus contracted. See again *State, ex rel.,* v. *Hawes, supra.*

There having been no error in sustaining the demurrer to the answer, the judgment is affirmed, with costs.

Filed Jan. 5, 1889.