THE STATE, EX REL. BANK OF BROOKSTON, *v.*
STOUT ET AL.

[No. 3,407.    Filed April 2, 1901.]

TOWNSHIP TRUSTEE.—*Liability.—Unlawful Issue of Warrant.—Statute Construed.*—The fact that a township warrant was issued by a trustee in violation of law will not support an action on the official bond of the trustee by the assignee of the warrant, since §§8081, 8082 Burns 1894, relative to the issuing of warrants whose aggregate amount will be in excess of the fund on hand to which the warrant or debt is chargeable, and of the fund to be derived from taxes assessed against the township for the year in which the debt is to be incurred, and requiring an order from the board of county commissioners, were intended for the protection of the township and not the purchasers of township warrants.  *pp. 446-463.*

SAME.—*Liability on Bond.—Failure to Keep Correct Accounts.—Misrepresentations.—Township Warrant.*—Under §5993 Burns 1894, making it the duty of township trustees to keep a true record of their official proceedings in a book provided for the purpose, and §§5917, 5929, requiring trustees to keep correct accounts of the receipts and expenditures of the special school revenue, and §7543, making the sureties on their official bonds liable for the faithful discharge of all duties required of them by law, one who has suffered loss in the purchase of a township warrant because of the failure of the trustee to keep a true record of his official proceedings, and because of misrepresentations made by the trustee in regard thereto, and concerning the warrant, cannot recover for the injuries in a suit on the official bond of the trustee, since the wrongful acts of the trustee were not violations of duties which the trustee owed specially to the purchaser of the warrant, but were violations of duties which the trustee owed generally to the public, and the representations were not made in the performance of official duties enjoined upon him by law.  *pp. 451-465.*

From the Tippecanoe Superior Court.  *Affirmed.*

*J. E. Rose* and *J. H. Rose,* for appellant.

*J. F. Hanly* and *W. R. Wood,* for appellees.

BLACK, J.—This was an action upon the official bond of Thomas G. Stout as trustee of Grant township, Newton county. A demurrer of the principal and a demurrer

of the sureties to the complaint, for want of sufficient facts, were sustained. Omitting portions of the complaint not requiring notice, it appeared in its averments that on the 15th of December, 1896, Stout, as such trustee, and while discharging the duties of the office, purchased of George M. Ray certain school supplies, being seven atlases of the world, seven American Standard dictionaries of the English language, and seven pictorial views; that there were then in the township seven district schools, and Stout purchased one of each of the articles for use in each of these schools. The pleading described the articles and stated their intended use for purposes of instruction and reference in the branches of study required by law to be taught in the schools, and their suitableness for such use, one of each of the articles being designed for use by the entire school. It was alleged that these articles were at the time of the purchase thereof delivered by Ray to Stout as such trustee, who immediately thereafter placed one of each of the articles in each of the schools of the township; that "said supplies were used by said schools for the purposes aforesaid continuously from that time hitherto;" that Stout as such trustee purchased these supplies for the price of $420, and they were at that time reasonably worth that sum; that he did not pay for them at the time of the purchase, but bought them on the credit of the township; that to evidence the indebtedness of the township to Ray therefor, Stout, as such trustee, on the same day executed to Ray the warrant, or promissory note, of the township, whereby it promised to pay Ray on the 15th of June, 1898, $420, with eight per cent. per annum interest thereon from the date thereof until paid, and attorneys' fees; that upon the face and in the body of the note, or warrant, Stout, as such trustee, certified in writing that the aggregate amount of indebtedness incurred on behalf of the township by the purchase of these supplies did not exceed the funds in his hands at the time out of which said indebtedness was payable and of the

funds to be derived from the taxes assessed against the township for the year in which the debt was incurred, and signed the certificate in the name of the township and of himself as the trustee thereof; that this certificate was false and was so known to be by Stout at the time he made it, and he at the time well knew that Ray would offer the note, or warrant, for sale to third persons, and particularly to the relator, and would sell it, if he could procure a purchaser; that at the time of the purchase, and as an inducement to Ray to sell the goods and accept the note, or warrant, Stout, as such trustee, represented to Ray that there were at the time no outstanding warrants, notes, orders, or indebtedness of any kind against the township or against the special school fund thereof, out of which the note to Ray was made payable, and that the township was not indebted to any person in any manner or to any amount; that, at the time, Ray well knew that Stout would thereafter receive from the December, 1896, disbursement of taxes assessed against the township for that year an amount of special school funds equal to the amount of said order, or warrant, but had no knowledge of the falsity of said certificate or representations of Stout, but relied upon the same and believed them to be true, and in reliance upon the truth thereof he sold the goods to Stout as trustee as aforesaid, and accepted the warrant in payment thereof; that the records and files in the office of the trustee did not disclose the existence of any other warrants or notes against the school township or that it was indebted in any manner or to any amount, but contained no record of any such outstanding indebtedness and showed and disclosed the fact to be that the school township was not indebted to any person; that while Stout theretofore, during the year 1896, had issued a large number of notes payable out of the special school fund of the township, and the aggregate thereof was largely in excess of the special school funds then in the hands of Stout and of the funds to be derived from the taxes assessed against the township for the year 1896, Stout had

wholly failed and neglected to make any record or memorandum thereof, as by law in duty bound to do, although he at all times during the year had in his office proper records and files for that purpose; that Ray had no knowledge of the issuance of said notes or warrants or the existence of said indebtedness, but relied wholly on said records and files and the representations of Stout aforesaid, and at all times herein referred to believed that said purchase did not create a debt against said school township and the special school funds thereof in excess of the special school funds in the hands of Stout at the time of the purchase and of the special school funds to be derived from the taxes assessed against the township for the year in which the debt was incurred; that Stout executed the certificate contained in said warrant with full knowledge that intending purchasers might, and in all probability would, rely on the truth thereof, and with the intent of having the same relied upon as true; that thereafter, and prior to the 11th of March, 1897, the relator purchased said warrant from Ray and paid him therefor at the time of the purchase $400; that prior to the purchase of the warrant, the relator made inquiry of Stout, as the trustee of the township, at his office in the township, as to the financial condition of the school township, and as to whether there was any outstanding indebtedness against said fund, and as to the necessity for the purchase of said supplies, and as to whether the purchase thereof created a debt against the school township and the special school fund thereof in excess of the funds then in the hands of Stout as such trustee and of the funds to be derived from the taxes assessed against the township for the year in which the debt was incurred; that thereupon Stout, as such trustee, well knowing that the relator was negotiating for the purchase of the warrant and was making such inquiries of him for the purpose of determining the validity of the warrant, and that the relator was wholly ignorant with reference to

said facts, stated and represented to the relator that, at the time said supplies were purchased and said warrant was issued, there were no other notes, warrants, orders, or indebtedness due from or outstanding against the school township or the special school fund thereof except said notes, or warrant, for $420, for the purchase of which the relator was at the time negotiating, and another order, note, or warrant for the same amount, issued at the same time, given for other and different school supplies purchased by Stout, and that he had special school funds on hand at the time of said purchase and issue of said warrant nearly equal to the aggregate amount of said two orders, and that the aggregate amount of said two warrants was not in excess of the special school funds in his hands at the time of the issuance thereof and of the special school funds derived from taxes assessed against his township for the year 1896, and received by him during that year, after the purchase of said supplies and the issuance of said notes, and that the taxes so received by him during the year 1896, and after said purchase and issuance of said orders, were in excess of the aggregate amount of said two warrants; that at the same time, and prior to the purchase of said note, and with a view to determining the validity of said warrant and the indebtedness thereby evidenced, the relator examined the records and files in the office of Stout, as such trustee; that these records and files disclosed the fact to be that Stout had received from the June, 1896, disbursement of taxes more than $1,000 of special school funds belonging to his township, and that he had on hand on the 15th of December, 1896, nearly sufficient of said funds to equal the amount of said two warrants, and that he had received after the last mentioned date, from the December, 1896, disbursement of taxes, an amount of special school funds sufficient to equal the aggregate amount of said two warrants, and that at the time of purchasing said supplies and issuing said warrants there was no other warrant or order payable out of the special school fund of the

township then outstanding, nor had any such warrant been issued during the year 1896; that Stout, as such trustee, represented to the relator at said time that the facts disclosed by said record and files were true, and that they correctly stated the financial condition of the school township and its special school fund, and the indebtedness against the same. It was alleged that said statements and representations of Stout were wholly false and were so known to be by him at the time he made them; that on the 15th of December, 1896, there were outstanding and unpaid against said school township and against its special school fund, exclusive of said two notes, or warrants, a large number of notes, or warrants, payable out of the special school fund of the township, issued by Stout, as such trustee, during the year 1896, for maps, charts, and other school supplies suitable and necessary for the use of the schools of the township, which had been delivered to the school township prior to that date, "a more particular and definite description of which the plaintiff can not at this time give"; and that the aggregate amount of these warrants largely exceeded the special school funds assessed against the township for the year 1896, and the special school funds which at any time during that year came into the hands of Stout as such trustee; that Stout did not as such trustee keep any records or memoranda in his office of the issuance of said notes, or warrants, or of the indebtedness against the school township or its special school fund, as in duty bound to do, although there were in his office at all times during the year proper records and blanks for that purpose, but he wholly failed to discharge his duty in that behalf or to keep any record of said indebtedness or any part thereof, by reason whereof and of his representations aforesaid the relator was induced to believe and did believe that no such indebtedness existed against the school township or its special school fund; that Stout did not, on the 15th of December, 1896, have in his hands as such trustee special school funds belonging to the township nearly

State, *ex rel.*, *v.* Stout.

sufficient in amount to equal the aggregate amount of said two warrants, nor did he then have in his hands any special school funds whatever, but he had theretofore disbursed all the special school funds which had come into his hands as such trustee; that, unmindful of his duty in that behalf, he had wholly failed and neglected to keep any record or memorandum in his office of said disbursements, although there were in his office proper records and blanks for that purpose; that the relator had no knowledge of said disbursements, but relied wholly upon "said records and files and the representations of Stout aforesaid."

It was further averred that the aggregate amount of said two warrants was not in itself in excess of the special school funds in the hands of the trustee on the 15th of December, 1896, and of the special school funds to be thereafter derived from the taxes assessed against the township for that year and which came into his hands during that year after that date, but that in addition to said other warrants theretofore during that year issued by him and then outstanding the aggregate amount of said two warrants was largely in excess of said special fund in his hands and to be so derived; that the relator had no knowledge of the issuance of said warrants, except said two warrants, or of said disbursements from the special school fund, until long after the purchase of said warrant from Ray, nor did the relator have any means of knowing said facts, but in its purchase from Ray it was compelled to rely and did rely wholly upon the certificate in the body of the warrant and the facts disclosed by the records and files in the office of Stout and his representations as aforesaid, nor did the relator know prior to said purchase that the issuance of said warrant and the incurring of the debt evidenced thereby created a debt whose aggregate exceeded the special school fund on hand and to be derived from the tax assessed against the township for that year, nor had the relator any means of knowing such facts, but relied solely upon the certificate contained in the warrant

and the facts disclosed by said records and files and said representations of the trustee, and honestly believed that said records and files were well and faithfully kept by the trustee and that his said representations were true; that Stout well knew, when he made such representations that the relator was negotiating with Ray for the purchase of said warrant and had no knowledge or means of knowledge as to the financial condition of the school township and the special fund thereof and as to the indebtedness of the same, except such as was imparted by the records and files in his office and by his representations, and that the relator would and did rely upon the truth of said representations and upon the facts shown by said records and files; that relying upon said records and files and representations and the certificate in the warrant, the relator purchased it and paid for it as aforesaid; that when the relator so made inquiries, Stout represented to the relator that it was necessary to purchase said supplies for which the warrant was issued; that there were no other maps, charts, dictionaries, or apparatus in the schools of the township which could be used for the purpose for which the warrant was given, and that the schools were wholly without supplies of that or a similar character, and the relator relied upon this representation and believed it to be true and had no knowledge that it was not true when it purchased the warrant.

It was averred that the warrant is invalid and does not constitute a valid obligation against the township, for the reason that it created a debt against the township in excess of the funds in the hands of Stout at the time it was issued out of which it could be paid and of the funds to be derived by the taxes assessed against the township for the year in which the indebtedness was incurred; and that the relator had been damaged "by reason of the breaches of the conditions of said bond as aforesaid in the sum of $500," etc.

The official bond is made an exhibit in due form. The copy of a warrant is attached to the complaint as an exhibit,

but no reference to it as an exhibit appears in the body of the complaint. It could not properly be made an exhibit, the action being based, not upon the warrant of the township, but upon the official bond of the trustee. *State, ex rel., v. Helms,* 136 Ind. 122.

No debt was created against Stout personally by the purchase of the school supplies or the warrant issued therefor. *School Town, etc., v. Kendall,* 72 Ind. 91, 37 Am. Rep. 139; *State, ex rel., etc., v. Helms, supra.*

The appellant in argument contends that the complaint shows three breaches of the condition of the bond for the faithful performance by Stout of the duties of his office as trustee according to law: "(1) The issuance of the warrant by the trustee in violation of law; (2) the false representations made by the trustee in his official capacity to the relator, when it, as the trustee well knew, was negotiating for the purchase of the warrant, and which he knew it relied upon; (3) the failure of the trustee to keep a record of his indebtedness and of his proceedings as trustee, as required by law, and which would have disclosed to the relator the invalidity of the warrant."

The right of recovery is claimed by the appellant under §7543 Burns 1894, §5528 Horner 1897, whereby it is provided: "All official bonds shall be payable to the State of Indiana; and every such bond shall be obligatory to such State upon the principal and sureties, for the faithful discharge of all duties required of such officer by any law, then or subsequently in force, for the use of any person injured by any breach of the condition thereof."

The invalidity of the warrant is intended to be based upon the violation of the statute of 1875, §§8081, 8082 Burns 1894, §§6006, 6007 Horner 1897, providing that whenever it becomes necessary for the trustee of any township in this State to incur, on behalf of his township, any debt or debts whose aggregate amount shall be in excess of the fund on hand to which such debt or debts are chargeable,

and of the fund to be derived from the tax assessed against his township for the year in which such debt is to be incurred, such trustee shall first procure an order from the board of county commissioners of the county in which such township is situated, authorizing him to contract such indebtedness; and that before the board of commissioners shall grant such order, the township trustee shall file, in the auditor's office of his county, a petition, setting forth therein the object for which such debt or debts are to be incurred, and the approximate amount required, and shall make affidavit that he has caused notice to be given of the pendency of such petition, by posting notices in not less than five public places in his township, at least twenty days prior to the first day of the session of said board.

The purpose of the legislature in the act of 1875 has been said to be "to place a general limit and check upon township trustees, in the contracting of debts, in whatever capacity they may act, whether as trustees of the civil or school townships." *Middleton* v. *Greeson,* 106 Ind. 18; *Jefferson School Tp.* v. *Litton,* 116 Ind. 467.

It is settled that a township trustee of this State has no power to bind his township by a contract purporting to create a debt of the township in excess of the fund on hand to which the debt is chargeable and of the amount of such fund to be derived from the tax assessed against the township for the year for which the debt is to be incurred, without first obtaining an order from the board of county commissioners as provided in §§8081, 8082 Burns 1894, §§6006, 6007 Horner 1897. *Clark School Tp.* v. *Grossius,* 20 Ind. App. 322.

While a township trustee has no power to bind his township by a contract in violation of the provisions of this statute of 1875, it is settled that when he undertakes to bind his school township by contracting a debt contrary to these statutory provisions, and anything for which he has authority to expend money from the special school fund has been

received and retained by the school township under the contract, which is beneficial to such township, there may be a recovery against the school township for the benefit so derived by it, the right to recover resting, not upon the contract, but upon the fact that the school township received and enjoyed the benefit of something suitable and necessary, which the trustee, as such, would have had authority of law to procure for the benefit of his school township with money of its special school fund in his hands, without contracting a debt therefor. *Clark School Tp.* v. *Home, etc., Co.,* 20 Ind. App. 543; *Reeve School Tp.* v. *Dodson,* 98 Ind. 497.

The complaint, proceeding upon the theory that the warrant is invalid, and that the relator's remedy is dependent upon its invalidity, avers facts which would have made it the duty of the trustee, before incurring the debt, to comply with the provisions of the statute of 1875, above mentioned, and shows representations of the trustee to Ray and to the relator which, if true, would have rendered such compliance unnecessary. Notwithstanding the fact that the amount of the debt was in excess of the fund on hand to which the debt was chargeable and of the fund to be derived from the tax assessed against the township for the year in which the debt was to be incurred, the debt could be incurred properly if the provisions of the statute were observed, and the warrant would not be invalid unless the trustee failed first to procure an order from the board of county commissioners as provided for by the statute.

If the action were upon the warrant against the school township, the defense of invalidity by reason of failure to comply with the statutory requirements might be pleaded effectually by the township. In the complaint in such action, it would not be necessary to anticipate such a defense by negativing the right of the trustee to incur the debt by reason of his failure to comply with the requirements of the statute of 1875.

If for the sufficiency of the complaint before us it was

necessary to show therein the invalidity of the warrant and the resulting inability of the relator to recover its claim from the school township, it would seem necessary to aver in the complaint facts showing, not merely that there was occasion for complying with the statute of 1875, but also that the trustee did not procure authority as provided in that statute. In view of the presumption indulged, where the contrary does not appear, that the public officer did his duty, it is necessary, in order to charge him and his sureties upon his official bond, plainly to show by the averment of facts that he failed to take the steps required by law to bring his act within his official duty. The complaint shows the issuing of a warrant which the trustee had authority to issue in the absence of the limitation upon his authority created by the statute of 1875. It also shows circumstances which made it necessary to proceed as provided in that statute, but it does not show directly by the facts alleged that the trustee did not procure the special authority as provided by the statute. Without regard to the want of such averments, which may be supplied by amendment, we may direct our inquiry as if the violation of official duty in the issuing of the warrant were sufficiently shown. The complaint shows a state of facts such as would render the school township liable to the original holder of the warrant, not upon the written contract, if invalid, but upon the implied obligation to pay the reasonable value of the necessary and suitable supplies delivered and accepted and used. This has been decided in many of our cases. Assuming the warrant to be invalid, the township would not be liable upon it to the relator, a. purchaser thereof in good faith for a valuable consideration without notice of its invalidity. One who deals with a public officer with limited, naked statutory powers, is bound at his peril to ascertain the scope of the officer's authority, and can not found any claim upon acts done by such officer in excess of his statutory authority. *Platter* v. *Board, etc.,* 103 Ind. 360; *Rissing* v. *City of Ft. Wayne,* 137 Ind. 427.

All persons dealing with a township trustee are bound to take notice of the extent and the limits of his authority. They are chargeable with knowledge that he has no authority except such as the statutes confer upon him as an official, that he is a special public agent with limited statutory authority which all who deal with him are presumed to understand. A warrant of a township trustee payable out of a particular fund is not negotiable as commercial paper governed by the law merchant, and an assignee takes it at his risk, charged with notice of all infirmities that attached to it in the hands of the original holder, or payee. *Union School Tp.* v. *First Nat. Bank,* 102 Ind. 464; *State, ex rel.,* v. *Hawes,* 112 Ind. 323; *State, ex rel.,* v. *Helms,* 136 Ind. 122; *Davis* v. *Steuben School Tp.,* 19 Ind. App. 694.

The complaint represents the relator, not as the assignee of an account, or as the equitable owner of a claim under an implied promise derived by assignment from Ray, but as the purchaser of the warrant which Ray had accepted in payment for the supplies.

In *State, ex rel.,* v. *Helms, supra,* the complaint on a township trustee's bond showed that the trustee had borrowed money of the relator with which to build a schoolhouse, and that the trustee had appropriated the money to his own use; also that in attempting to incur the debt on behalf of the township, the trustee had violated the provisions of §§8081, 8082 Burns 1894, §§6006, 6007 Horner 1897, being §§1 and 2 of the act of March 11, 1875. It was said in the course of the opinion of the court: "If it had been shown in the complaint that the money was received by the trustee and used for the benefit of the township, the plaintiff would have no recourse against the bondsmen, but his remedy would have been against the township in the name of which the contract was made. It is because the township did not receive these funds, and because the trustee did not comply with the law providing a method by which the debt might be incurred, and then appropriated to

his own use the sum borrowed, that suit can be maintained against his bondsmen." See, also *Helms* v. *State, ex rel.,* 19 Ind. App. 360.

If this be the correct view, it would seem in the case before us that while Ray could not have recovered upon the unauthorized warrant, he might have recovered from the township the value of the supplies furnished by him, and could not have had recourse to the official bond of the trustee.

In *Litten* v. *Wright School Tp.,* 1 Ind. App. 92, the action was against the school township by an assignee of the warrant. Evidence denying the necessity and usefulness of the supplies (averred in the complaint) was held admissible. There was no question as to the violation of the statute involved.

In *Boyd* v. *Black School Tp.,* 123 Ind. 1, the action was by an assignee, the complaint alleging that the school furniture for which the assigned note was given was suitable and necessary, etc., that it was delivered, received, and retained, etc., and that the articles were worth the amount which it was agreed should be paid for them. There was a recovery for a less amount. It appears from the opinion that the evidence disclosed that the trustee contracted the debt in violation of §§8081, 8082 Burns 1894, §§6006, 6007 R. S. 1881 and Horner 1897. The appeal, however, was taken by the plaintiff, the defendant presumably being content; and, while the judgment was affirmed, the question now under consideration does not appear to have been suggested.

In *Oppenheimer* v. *Jackson School Tp.,* 22 Ind. App. 521, the complaint contained two paragraphs, the first on the written certificate issued by the trustee for school furniture, and assigned by indorsement to the plaintiff, the second upon account, assigned in writing to the plaintiff. In the first paragraph the plaintiff sued on the written contract, and not for the value of the property for which it was given; in the second he sued for the value of the property received and used by the school township. It was held that an answer

based upon the failure of the trustee to comply with the provisions of §§8081, 8082 Burns 1894, §§6006, 6007 Horner 1897, presented a good defense to the first paragraph, but not to the second.

*Boyd* v. *Mill Creek School Tp.,* 124 Ind. 193, was an action brought by the assignee of one of a number of certificates issued by a township trustee by which he purported to bind the township to pay for certain lightning rods erected on schoolhouses. The certificates were held illegal for fraud. In respect to the claim that the assignee of one of the certificates was entitled to recover the actual value of the goods furnished the township, the court said that "it is enough to say he furnished the township nothing, nor does he claim as the equitable assignee of any one who furnished material or performed work and labor for the benefit of the township. He sues as the assignee of a contract, and the only question is as to his right to recover on the contract sued on."

An act of 1883 (Acts 1883, p. 114) provided in its second section, that any trustee who should contract a debt in the name or in behalf of his civil or school township contrary to the provisions of §§1 and 2 of the act of 1875, §§6006, 6007 Horner 1897, should be personally liable, and liable on his official bond, to the holder of any contract or other evidence of indebtedness, for the amount thereof. This statute of 1883 was repealed in 1889. Acts 1889, p. 278. In *State, ex rel.,* v. *Helms,* 136 Ind. 122, the claim of the relator arose while the act of 1883 was in force. The complaint charged that the trustee had violated the statute of 1875 in attempting to incur the debt on behalf of his school township and had appropriated the money borrowed to his own use. The liability of the bondsmen was based upon the act of 1883, the repeal of which it was held did not affect the obligation to the relator which accrued while the act was in force.

In *State, ex rel.,* v. *Hawes,* 112 Ind. 323, the court, speaking with reference to the statute of 1883, Acts 1883, p. 114,

said: "It would seem probable that the intention of the legislature was to afford redress to those who might become holders of contracts or other evidences of indebtedness issued by a township trustee, in the name of the township, to persons who had in good faith parted with money or property, in pursuance of a contract made by the trustee contrary to the provisions of §§6006, 6007 R. S. 1881, upon which the trustee was not personally bound, and which, but for those sections, would have entitled the holder to a remedy against the township."

*Jefferson School Tp.* v. *Litton,* 116 Ind. 467, was an action against the school township to recover the amount of certificates of indebtedness issued by the trustee for school furniture, the plaintiff being the assignee of the certificates, and the complaint alleging that the articles furnished were suitable and necessary, that they were delivered to the corporation and accepted by it, that they had ever since been in use in the schools, and that they were of the value agreed upon and stated in the certificates. It was held that the complaint was sufficient on demurrer. The corporation answered, setting up a proposed defense based on the statute of 1875, §§6006, 6007 Horner 1897, the averments of the answer not being stated by the court. The debt in that case had been incurred in 1882. It was said by the court that the township trustee may at any time readily determine whether or not a debt which he is about to incur on behalf of his township may be incurred by him without authority from the county board. "He can readily know how much he has on hand, and he can also readily know, very nearly at least, by an examination of the tax duplicates and by consulting with the county treasurer, how much he will receive during the year from the tax assessed for, and collectible in, the year. Persons dealing with him, also, will thus have some opportunity of ascertaining whether or not the debt which he may propose to incur on behalf of his township may be incurred by him without authority from the county

board.  *  *  *  The answer shows that the debt involved here, and which was incurred on behalf of the school township by the township trustee, was in excess of the amount of the fund on hand, and the fund to be derived from the tax assessed against the township, for the year in which the debt was incurred.   The answer, therefore, brings the case within the terms of §§6006, 6007, *supra.*   We have concluded, however, that the act of 1883 (Acts 1883, p. 114) makes the debt valid, and, therefore, renders the answer insufficient."   The court then set out the first section of the act of 1883, authorizing township trustees to levy additional taxes sufficient to pay indebtedness incurred by township trustees in behalf of their school and civil townships in excess of the ability to pay without an additional levy, and thereby impliedly legalizing such claims in so far as debts had then been incurred in violation of §§6006, 6007, *supra,* which would include the debt so incurred in 1882 in suit. The second section of the act of 1883 was referred to as strengthening such conclusion, and it was said of the second section:  "As to the future, two purposes are manifest in the section:   One is to save innocent creditors, and the other is to effectually prevent any further extravagance on the part of township trustees in violation of §§6006, 6007, *supra,* by making them and their bondsmen liable for the debts thus contracted."   The answer therefore was held insufficient because the debt contracted in 1882 in violation of the statute of 1875 was legalized by the act of 1883.   The inference to be drawn from the case is that an action would not lie in favor of a *bona fide* assignee upon a certificate issued in violation of the statute of 1875, unaided by the act of 1883, though in the complaint it were alleged that the school supplies for which it was given were suitable and necessary for the schools and were delivered to and accepted by the corporation and had ever since been in use in the schools and were of the value stated in the certificate.

The statute of 1883, the purpose and effect of which have

State, *ex rel.*, *v.* Stout.

thus been stated in the decided cases, had been repealed long before the transactions described in the complaint. The relator purchased the warrant from one who could not maintain an action on the official bond of the trustee. The purchaser was chargeable with notice of all the infirmities of the warrant, and took it at his own risk. If he could recover of the school township in an action for the reasonable value of the supplies furnished by Ray, which would seem to be impossible, under the facts stated in the complaint, he is not here pursuing such relief, but is seeking as the purchaser of the warrant to be placed in a better situation as against the bondsmen than that occupied by the person from whom he purchased the warrant. We are bound to conclude, we think, that, assuming the invalidity of the warrant to be sufficiently shown, the complaint does not state a cause of action, unless the representations of the trustee to the relator or his failure to keep correct records as alleged was such violation of official duty as to constitute breach of his official bond available to the relator.

The principal and sureties upon an official bond are obligated thereby to the State "for the faithful discharge of all duties required of such officer by any law, then or subsequently in force, for the use of any person injured by any breach of the condition thereof." §7543 Burns 1894, §5528 Horner 1897.

It is made the duty of a township trustee to keep a true record of his official proceedings in a book to be provided for that purpose. §8068 Burns 1894, §5993 Horner 1897. And the records and other books of the township trustee shall always be open for public inspection. §8077 Burns 1894, §6002 Horner 1897.

Township trustees are required to keep accurate accounts of the receipts and expenditures of the special school revenue, and to render to the county commissioners annually, and as much oftener as they may require, a report thereof in writing, etc., a copy of which must be filed with the

county superintendent, and upon failure of the trustee to discharge any of the duties required of him relative to schools and school revenues, the board of county commissioners shall cause suit to be instituted against him on his official bond. §§5917, 5929 Burns 1894, §§4441, 4450 Horner 1897. See also, §8072a Burns Supp. 1897.

Trustees are also required to keep a record of their proceedings relative to the schools, including all orders and allowances on account thereof. §5918 Burns 1894, §4442 Horner 1897.

Where the suit is not against a defendant individually, but is upon his official bond, that instrument must furnish the measure of his liability, which is identically the same as that of his sureties. *Hawkins* v. *Thomas,* 3 Ind. App. 399. The liability of the defendants upon the bond could not extend to acts of the official other than those which constituted a violation of his official duty, acts or omissions in his official capacity, whereby he failed to perform faithfully the duties of his office according to law; that is, the duties of a township trustee, an official agent having limited statutory authority. *Hawkins* v. *Thomas, supra; Scott* v. *State, ex rel.,* 46 Ind. 203.

To authorize a recovery against an officer for violation of duty, it is not sufficient to show that the officer has violated a duty which he owed officially to some person other than the plaintiff, or to the public generally, and therefore to the plaintiff in conjunction with other citizens as members of the general public, and to show also that the plaintiff has suffered indirect or remote injury from the failure of the officer to perform his official duty, and that the official conduct complained of was fraudulent and corrupt, but it must be shown that the officer violated a duty which he owed specially to the plaintiff. *Lane* v. *Board, etc.,* 7 Ind. App. 625 ; *State, ex rel.,* v. *Harris,* 89 Ind. 363, 46 Am. Rep. 169 ; *State, ex rel.,* v. *White,* 88 Ind. 587 ; *Louden* v. *Ball,* 93 Ind. 232 ; *State, ex rel.,* v. *Kent,* 53 Ind. 112 ; *State, ex rel.,* v. *Keifer,* 120 Ind. 113.

This principle seems to be applicable to all the pretended breaches of the bond here in suit. Manifestly, the direct purpose of the statute of 1875, often mentioned in this opinion, is the protection of the township from claims on contracts to which without this statute it would be subjected. It was intended to remedy an abuse from which townships had been suffering. An intention to protect innocent holders of warrants issued was intended by the act of 1883, which, however, was repealed as above noted. The injury to the buyers of township warrants is remote and indirect. So the direct purpose of the statutory provisions relating to the records and papers and reports of the trustee is the protection of the public, particularly the township. If a purchaser of a township warrant suffers loss through his reliance upon his examination of such records, he can not claim that in such neglect of statutory requirement the trustee has violated a duty which he owed to purchasers of such paper personally and directly. Such injury must be regarded as too remote. The representations made by the trustee to the relator concerning the warrant and concerning the records of his office were not made in connection with the performance of any official duty enjoined upon him by law, but related solely to past acts and transactions, and must be regarded as representations made in his individual character and not in his official capacity.

Judgment affirmed.